1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

JOHN THOMAS SUNDQUIST,   )  No. C 06-3387 MMC (PR)
                           )
        Plaintiff,    )  **ORDER GRANTING DEFENDANTS PHILP**
                           )  **AND HUMBOLDT COUNTY'S MOTION**
  v.                   )  **FOR SUMMARY JUDGMENT; GRANTING**
                           )  **DEFENDANT TRANSCOR'S MOTION TO**
                           )  **DISMISS OR, IN THE ALTERNATIVE,**
GARY PHILP, SHERIFF, et al.,   )  **MOTION FOR SUMMARY JUDGMENT**
                           )
        Defendants.  )  **(Docket Nos. 6 & 18)**
_____)

On May 23, 2006, plaintiff, a "sexually violent predator" ("SVP") under California's

Sexually Violent Predator Act (Cal. Welf. & Inst. Code §§ 6600, et seq.) ("SVPA"), and

proceeding pro se, filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff alleges that defendants violated his constitutional rights by transporting and housing

him under conditions that are unlawful as applied to civil detainees.  On October 4, 2006, the

Court found plaintiff had stated cognizable claims against defendants Humboldt County

Sheriff Gary Philp ("Philp"), the Humboldt County Board of Supervisors ("Humboldt

County"), and Transcor America, LLC. ("Transcor")[1].  Now before the Court are the

following motions: (1) defendants Philp and Humboldt County's motion for summary

_____

[1]In his complaint, plaintiff erroneously sued Transcor as Trans Corp Transportation
Company.

*United States District Court*
*For the Northern District of California*

1  judgment, to which plaintiff has filed an opposition and defendants have filed a reply, and

2  (2) defendant Transcor's motion to dismiss or, in the alternative, motion for summary

3  judgment, which plaintiff has not opposed.

### FACTUAL BACKGROUND[2]

5       On October 12, 2004, plaintiff was temporarily transferred from Atascadero State

6  Hospital to the Humboldt County Correctional Facility ("HCCF") for civil recommitment

7  proceedings pursuant to the SVPA.  (Compl. at 4.3 ¶ 4.)  He was transported by defendant

8  Transcor in a van in which he was not separated from penal detainees and/or prisoners.

9  (Compl. at 4.3 ¶ 4.)  En route from Atascadero State Hospital to the HCCF the van stopped at

10 a transfer point and plaintiff was housed in a holding cell with five penal transportees for

11 approximately six hours.  (Id.)

12       On October 13, 2004, plaintiff arrived at the HCCF, where he was subjected to an

13 "unclothed body search" and a "visual body cavity search." (Compl. at 4 ¶ 1.)

14       On October 14, 2004, plaintiff was classified and placed in protective custody in

15 Special Housing Unit ("SHU") S529 at the HCCF.  (Id.; Decl. Karen Lovie Supp. Defs. Philp

16 and Humboldt County's Mot. S. J. ("Lovie Decl.") ¶ 13.)  Plaintiff was not segregated from

17 other detainees while in protective custody; he shared a two-man cell with penal detainees

18 and/or prisoners during the seventy days he was housed in the protective custody unit.

19 (Compl. at 4.1 ¶ 2.)  On December 21, 2004, following his recommitment as an SVP,

20 plaintiff was released from the custody of the HCCF and transported back to Atascadero

21 State Hospital.  (Lovie Decl. ¶ 17.)

22       In the instant action, plaintiff claims defendants violated his constitutional rights by

23 transporting him with penal detainees and/or prisoners, housing him with penal detainees

24 and/or prisoners, and subjecting him to an unconstitutional search.

### DISCUSSION

27 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28       [2]The facts set forth in the background section are not disputed by the parties.

**United States District Court**
For the Northern District of California

2

A.    <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>See</u> <u>id.</u>

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>see also</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  <u>See</u> <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  <u>See</u> <u>T.W. Elec. Serv. v. Pacific Elec.</u>

1   Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

2       The Court treats the allegations in plaintiff's verified complaint as an opposing

3   affidavit to the extent such allegations are based on plaintiff's personal knowledge and set

4   forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 &

5   nn.10-11 (9th Cir. 1995).

6   B.    The SVPA

7       California's SVPA is codified at California Welfare & Institutions Code §§ 6600-

8   6609.3.  In Hydrick v. Hunter, 500 F.3d 978, 983 (9th Cir. 2007), petition for cert. filed,

9   76 U.S.L.W. 3410 (U.S. Jan. 17, 2008) (No. 07-958), the Ninth Circuit summarized how the

10  SVPA operates.  The SVPA defines an SVP, as a person "convicted of a sexually violent

11  offense against two or more victims for which he or she received a determinate sentence and

12  who has a diagnosed mental disorder that makes the person a danger to the health and safety

13  of others" that is, is "likely [to] engage in sexually violent criminal behavior."  Id. at 983.  At

14  least six months before a person who has committed the predicate offenses is to complete his

15  sentence, he is evaluated by the Department of Corrections and Department of Mental

16  Health.  Id.  If those two departments agree that the person evaluated may be an SVP, a

17  petition for commitment may be filed by the district attorney or counsel for the county in

18  which the evaluated person was convicted.  Id.  If that person is found by a jury to be an SVP

19  who poses a danger to the health and safety of others, he is civilly committed for an

20  indefinite period to commence after his criminal sentence is fulfilled.  Id.

21      Once civilly committed, SVPs undergo a five-phase treatment program.  Id. at 983-

22  984.  Each year, an SVP has a right to a show cause hearing to determine whether his

23  commitment should be continued.  Id. at 984.  If it is found that the SVP continues to be a

24  danger to the health or safety of the community, he is committed for two years from the date

25  of the finding.  Id.  These successive periods of commitment can be continued indefinitely, or

26  until the SVP completes all five phases of treatment; upon successful completion of all five

27  phases of treatment, the SVP is conditionally released under the supervision of the California

28  Mental Health Department.  Id.

4

United States District Court
For the Northern District of California

C.      Sheriff Philp and Humboldt County's Motion for Summary Judgment

Plaintiff claims that when he was at the HCCF defendants Philp and Humboldt County failed to provide him with statutory protections to which other civil detainees are entitled, subjected him to an unreasonable search, and housed him with penal detainees and/or prisoners.  Defendants argue they are entitled to summary judgment because plaintiff has not produced evidence that creates a genuine issue of material fact with respect to plaintiff's assertions that defendants' actions violated his constitutional rights.

        1.      Equal Protection

Plaintiff alleges defendants failed to provide him with the protections afforded to persons civilly detained under the Lanterman-Petris-Short Act (Cal. Welf. & Inst. Code §§ 5000, et seq.  ("LPS Act")), which Act sets forth the rights applicable to persons who have been involuntarily detained in a mental health treatment facility for evaluation or treatment. (Compl. at 4.1 ¶ 2, 4.2 ¶ 3.)

Liberally construed, plaintiff's claim is that he was denied equal protection because he was treated differently from other civil detainees who are entitled to the protections of the LPS Act.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (internal quotation and citation omitted).

Defendants argue plaintiff's claim is without merit because the LPS Act by its terms applies only to those who are involuntarily detained in a mental health facility for evaluation or treatment, and does not apply to individuals such as plaintiff, who are involuntarily confined because they are facing civil commitment proceedings under the SVPA.  In his opposition, plaintiff reasserts that the LPS applies to SVPs, but provides no evidence in support of his assertion.

The Court finds persuasive the reasoning of district courts that have addressed the question herein and found that individuals facing commitment under the SVPA are not

5

United States District Court
For the Northern District of California

1  similarly situated to those detained under the LPS Act.  See Munoz v. Kolender, 208 F. Supp.

2  2d 1125, 1136 & n.8 (S.D. Cal. 2002) (distinguishing SVPA from LPS Act and other

3  California involuntary confinement statutes; finding persons committed under SVPA and

4  LPS Act are not similarly situated); see also Sisneroz v. Whitman, No. CV F 01-5058 AWI

5  DLB, 2006 WL 2583000, *5 (E.D. Cal. Sept. 6, 2006) (finding SVP's allegation of

6  entitlement to protections of LPS Act does not state equal protection claim); Johnson v. Santa

7  Clara County, No. C 02-3279 SI (PR), 2003 WL 22114269, *3 (Sept. 5, 2003) (same).

8         It is undisputed that plaintiff was confined at the HCCF as an SVP; accordingly, as the

9  Court finds, as a matter of law, that SVPs are not similarly situated to individuals detained

10 under the LPS Act, defendants are entitled to summary judgment on plaintiff's equal

11 protection claim.

12              2.    Unreasonable Search

13        Plaintiff has presented evidence, in the form of his statement in his verified complaint,

14 that he was "subjected to an unclothed Body Search and a Visual Body Cavity Search" when

15 he arrived at the HCCF from Atascadero State Hospital on October 13, 2004.[3]  (Compl. at 4 ¶

16 1.)

17        The Fourth Amendment right to be secure against unreasonable searches and seizures

18 extends to SVPs.  Hydrick, 500 F.3d at 993.  The reasonableness of a particular search or

19 seizure is determined by reference to the detention context and is a fact-intensive inquiry.  Id.

20        At the outset, defendants argue plaintiff has failed to present evidence supporting a

21 basis for liability against the individual who conducted the search because he does not

22 identify said individual.  Plaintiff does not appear to be asserting a claim against the

23 individual who conducted the search, however; rather, based on the allegations in his

24 complaint and argument in his opposition papers, he appears to be asserting a claim for

25 municipal liability based on an HCCF policy of conducting strip searches and visual cavity

26 searches on detainees arriving from other facilities.  Specifically, plaintiff does not name in

27

28        [3]Defendants refer to an unclothed body search as a "strip search"; for purposes of consistency and clarity, the Court hereinafter will do so as well.

his complaint the individual who conducted the search, nor does he identify a "Doe" defendant to be named later; he does allege, however, that Sheriff Philp, in his capacity as a policymaker for the HCCF, was responsible for the search.  (Compl. at 4 ¶ 1.)  Similarly, in his opposition papers, plaintiff does not include any information about the specifics of the search or state that he requires additional time to discover such information pursuant to Federal Rule of Civil Procedure 56(f).  Further, plaintiff makes clear in his opposition that he is not objecting to the manner in which the search was conducted; rather, he argues, it was unreasonable to search him at all because he had been transferred from a secure facility (Atascadero State Hospital), he had been thoroughly searched prior to leaving said facility, and he was transported directly into the custody of the HCCF under constant supervision.  Accordingly, the Court will address plaintiff's claim as one for municipal liability based on an unconstitutional policy of subjecting detainees, arriving at the HCCF from other facilities, to strip searches and visual cavity searches.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom results in a violation of a constitutional right.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  Under Monell, to impose municipal liability under § 1983 for a violation of a constitutional right, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that such policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that such policy was the moving force behind the constitutional violation.  See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

The Court must make the initial determination whether, under the facts as viewed in a light most favorable to plaintiff, subjecting plaintiff to a strip search and a visual cavity search when he arrived at the HCCF was unconstitutional.  A strip search that includes a visual body cavity search complies with the requirements of the Fourth Amendment so long as it is reasonable.  Bell v. Wolfish, 441 U.S. 520, 559 (1979).  In Bell, the Supreme Court evaluated the constitutionally of a blanket policy allowing visual body cavity searches,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   without regard to individualized suspicion, of all inmates at the county jail, including pretrial

2   detainees, after every contact visit with a person from outside the institution.  Id. at 559-60.

3   The Supreme Court upheld the policy because the possibility of smuggling drugs, weapons,

4   and other contraband into the institution presented significant and legitimate security

5   interests.  Id.  In finding that the searches allowed by the policy were reasonable under the

6   Fourth Amendment, the Supreme Court employed the following balancing test:

7
> The test of reasonableness under the Fourth Amendment is not capable of
> precise definition or mechanical application.  In each case it requires a
8   > balancing of the need for the particular search against the invasion of personal
> rights that the search entails.  Courts must consider the scope of the particular
9   > intrusion, the manner in which it is conducted, the justification for initiating it,
> and the place in which it is conducted.
10

11  Id. at 559.

12      Here, defendants, without conceding that plaintiff was subjected to any search upon

13  his arrival at the HCCF, argue that conducting a strip search and a visual cavity search when

14  he arrived would have been reasonable based on the HCCF's legitimate security interests.  In

15  support of their argument, defendants offer the declaration of Karen Lovie ("Lovie"), the

16  Compliance Officer for the HCCF; Lovie's duties include review of the policies and

17  procedures for operating the HCCF.  (Lovie Decl. ¶ 1.)  Lovie states the following:

18
> The HCCF has no information concerning plaintiff's allegation that he was
> subjected to a "strip search" upon his arrival at the HCCF.  Mr. Sundquist
19  > arrived at the HCCF on a State Custody Transfer Order from the Atascadero
> State Hospital, a state detention facility, and was a convicted felon.  It is a
20  > common practice for individuals from state detention facilities, such as
> Atascadero State Hospital, to attempt to smuggle contraband into [the] HCCF.
> As a matter of policy, strip searches in the HCCF are conducted based on the
21  > need and within legal limitations to maintain security and to prevent the
> introduction of weapons and contraband into the facility.  Detainees are not
22  > arbitrarily subjected to unnecessary strip or body cavity searches.  In addition,
> all strip and visual body cavity searches must be conducted in an area of
23  > privacy so that the search cannot be observed by any persons not participating
> in the search.
24

25  Lovie Decl. ¶ 16.

26      In neither his verified complaint nor his opposition does plaintiff produce evidence to

27  contradict defendants' evidence that it is a common practice for individuals from state

28  detention facilities such as Atascadero State Hospital to attempt to smuggle contraband and

8

United States District Court
For the Northern District of California

1  weapons into the HCCF.  Rather, as noted above, he argues that the search was unreasonable

2  because he had come from a secure facility where he had already been searched, and that he

3  had been transported directly from that facility to the HCCF while under constant

4  supervision.

5       The Court finds plaintiff has failed to create a genuine issue of material fact as to

6  whether he suffered a violation of a constitutional right when he was searched.  The recent

7  decision of the district court in <u>Johannes v. Alameda County Sheriff's Dept.</u>, No. C 04–0458

8  MHP, 2006 WL 2504400 (N.D.Cal. Aug. 29, 2006), is particularly relevant to the Court's

9  analysis.  In <u>Johannes</u>, the plaintiff, an individual awaiting civil commitment proceedings as

10  an SVP, was transferred to the Alameda County Jail from Atascadero State Hospital pursuant

11  to a court order, because he was needed as a witness to testify in another person's trial.  <u>Id.</u> at

12  *1.  Although Johannes had been pat-searched before leaving Atascadero State Hospital, he

13  was again pat-searched when he arrived at the county jail and was subjected to a strip search

14  and visual body cavity inspection the next day.  <u>Id.</u>  Johannes also was subjected to a strip

15  search and visual body cavity search each time he returned from court, resulting in a total of

16  eight such searches while he was at the county jail.  <u>Id.</u>  The searches were conducted

17  pursuant to a policy requiring all inmates who had been outside of the facility to be strip

18  searched and visually inspected upon their return.  <u>Id.</u> at *4.

19       In determining whether the search policy applied to Johannes violated the Fourth

20  Amendment, the district court balanced the need for the search against the invasion of

21  Johannes's privacy rights.  Based on the undisputed evidence that detainees can and do

22  attempt to bring contraband into the county jail, the district court concluded the policy was

23  reasonable, finding as follows:

24       The most important factor in the analysis is that Johannes had been outside the
     physical confines of the county jail just before each time he was searched.  His

25       contacts with the outside world provided him with opportunities to obtain
     contraband before he entered the jail from Atascadero and before he returned

26       from court.  The existence of these opportunities to obtain contraband provided
     a legitimate basis for application of defendants' strip search policy to Johannes.

27  <u>Id.</u> at *12.

28       As part of its analysis, the district court gave special consideration to Johannes's status

United States District Court
For the Northern District of California

as an SVP; specifically, the district court noted that (1) the planned nature of Johannes's transfer from Atascadero State Hospital to the County Jail gave him the time to plan and organize smuggling of contraband into the County Jail if he was so inclined; (2) Johannes's time in custody at the County Jail was not expected to be brief; and (3) Johannes had a lengthy and continuous history of incarceration that had led him to be classified as criminally sophisticated upon his arrival at the County Jail.  Id.

Similarly here, the evidence is undisputed that plaintiff was transferred to the HCCF from Atascadero State Hospital; individuals arriving from state detention facilities such as Atascadero State Hospital attempt to smuggle contraband and weapons into the HCCF; and defendants employed a search policy designed to protect both the legitimate security interests threatened by such smuggling and the privacy interests of the individual being searched. Further, and similar to the record before the court in Johannes, the evidence is undisputed that plaintiff knew in advance that he would be transferred from Atascadero State Hospital to the HCCF; his period in custody at the HCCF was not expected to be brief (he remained there for seventy days until his recommitment proceedings were completed); and he had a lengthy and continuous history of incarceration (he had been convicted of rape charges and incarcerated at Atascadero State Hospital for seventeen years, and had been committed as an SVP and incarcerated at Atascadero State Hospital prior to his transfer to the HCCF).  (See Lovie Decl. ¶ 13 & Ex D.)  Based on this evidence, the Court concludes plaintiff has not created a genuine issue of material fact as to his claim that his constitutional rights were violated because he was subjected to an unreasonable search under the Fourth Amendment.

Moreover, even if the particular search in question did result in a constitutional violation, plaintiff's claim of municipal liability must fail because he has not presented evidence showing the search was the result of an unconstitutional policy implemented by defendants.  Although the Court is not persuaded by defendants' argument that plaintiff has

United States District Court
For the Northern District of California

1  failed to establish the existence of <u>any</u> HCCF policy,[4] for the reasons discussed above, the

2  Court finds plaintiff has not raised a genuine issue as to whether such policy was

3  unconstitutional.  As discussed, defendants have produced undisputed evidence that

4  individuals arriving from state detention facilities attempt to smuggle contraband and

5  weapons into the HCCF, that the HCCF conducts strip searches or visual body cavity

6  searches as needed to prevent such smuggling, that detainees are not arbitrarily subjected to

7  unnecessary strip searches or body cavity searches, and that all strip searches and visual body

8  cavity searches are conducted in an area of privacy to ensure that the search cannot be

9  observed by persons not participating in the search.  Such a policy is reasonably related to the

10 HCCF's interest in maintaining security.  <u>See</u> <u>Bell</u>, 441 U.S. at 540.  Accordingly, even when

11 viewed in the light most favorable to plaintiff, his allegations do not give rise to a reasonable

12 inference that the violation of his constitutional rights was the result of an unconstitutional

13 policy.

14      As plaintiff has not created a genuine issue of material fact as to whether his

15 constitutional rights were violated as the result of an unconstitutional municipal policy,

16 summary judgment on plaintiff's unreasonable search claim will be granted in favor of

17 defendants.

18      3.      <u>Conditions of Confinement</u>

19      Plaintiff claims defendants violated his right to due process by housing him with penal

20 detainees and/or prisoners at the HCCF.[5]  Defendants do not dispute that plaintiff was housed

21

22      [4]Although the evidence does not show that defendants had a blanket policy of
23 subjecting every individual who arrived at the HCCF to a strip search and a visual body
   cavity search, the evidence, as noted, does show that (1) defendants had a policy of
   conducting such searches as needed to prevent the introduction of weapons and contraband
24 into the facility, and (2) it was a common practice for individuals from state detention
   facilities, such as Atascadero State Hospital, to attempt to smuggle contraband into the
25 HCCF.  The Court thus concludes plaintiff was searched pursuant to an HCCF policy
   allowing for a case-by-case determination as to when a search was required.

26      [5]In his complaint plaintiff states he was held at the HCCF on two occasions, first in
27 October 2004 and then again in February 2006.  All of the allegations in plaintiff's
   complaint, however, pertain solely to the conditions of his confinement at the HCCF between
28 October 13, 2004 and December 21, 2004, after which he was transferred back to Atascadero

United States District Court
For the Northern District of California

1   with penal detainees and/or prisoners; they argue they are entitled to summary judgment

2   because the evidence shows they had legitimate, non-punitive interests justifying plaintiff's

3   conditions of confinement, and that the restrictions imposed on plaintiff were not excessive

4   in relation to those interests.

5          The Fourteenth Amendment applies to conditions of confinement claims brought by

6   individuals who have not been convicted of a crime.  Jones v. Blanas, 393 F.3d 918, 931 (9th

7   Cir. 2004).  Consequently, individuals detained on criminal charges may not be subjected to

8   conditions that amount to punishment prior to an adjudication of guilt.  Id.  Similarly,

9   individuals who have been involuntarily committed may not be subjected to conditions of

10  confinement that amount to punishment, "within the bounds of professional discretion,"

11  Hydrick, 500 F.3d at 997; rather, the conditions and duration of confinement must "bear

12  some reasonable relation to the purpose for which [such] persons are committed," see id.

13  (internal quotation and citation omitted).  Further, individuals who are awaiting civil

14  commitment proceedings are entitled to protections at least as great as those afforded to

15  civilly committed individuals and to individuals accused but not convicted of a crime.  Jones,

16  393 F.3d at 931-32.

17         In short, at a minimum, individuals detained under civil process but not yet committed

18  cannot be subjected to conditions that amount to punishment, id. at 932, and, in particular,

19  individuals who have been civilly committed as SVPs may not be subjected to conditions of

20  confinement that amount to punishment, Hydrick, 500 F.3d at 997 (holding substantive due

21  process protections of the Fourteenth Amendment apply to SVPs).  Punitive conditions may

22  be shown where challenged restrictions are expressly intended to punish, where they are

23  excessive in relation to a non-punitive purpose, or where they are employed to achieve

24  objectives that could be accomplished by alternative and less harsh methods.  Jones, 393 F.3d

25  at 932.  Additionally, a presumptive of punitive conditions of confinement applies when an

26

27  _____

28  State Hospital; there are no allegations concerning the February 2006 period of confinement.
    Accordingly, the only claim before the Court is that concerning the conditions of plaintiff's
    confinement at the HCCF for the period October 13, 2004 through December 21, 2004.

United States District Court
For the Northern District of California

individual awaiting adjudication as an SVP is confined "in conditions identical to, similar to, or more restrictive than those in which his criminal counterparts are held," id., or "in conditions more restrictive than those the individual would face following SVPA commitment," id. at 933.

As noted, plaintiff alleges he was subjected to punitive conditions of confinement because he was housed with penal detainees and/or prisoners during his temporary confinement at the HCCF. Although it is undisputed that plaintiff was facing "recommitment" proceedings under the SVPA when he was transferred from Atascadero State Hospital to the HCCF, neither party has clarified whether plaintiff's status when he arrived at the HCCF was that of an individual still serving a prior term of commitment as an SVP, or whether his status was that of an individual whose prior term of commitment as an SVP already had expired.[6] Because the record is unclear, the Court in an abundance of caution assumes, arguendo, that plaintiff was not serving a term of civil commitment when he arrived at the HCCF, but was a civil detainee awaiting adjudication as an SVP; consequently, the Court will apply to plaintiff's claims the presumption of punitive conditions of confinement set forth in Jones.[7]

The Jones presumption is a rebuttable one; when such a presumption arises, the defendant must be given an opportunity to show that legitimate, non-punitive interests justified the conditions to which an SVP was subjected, and that the restrictions imposed upon the SVP were not excessive in relation to those interests. Id. Here, defendants assert they had legitimate, non-punitive interests justifying plaintiff's placement in the HCCF protective custody housing unit and that the restrictions imposed upon plaintiff while he was housed in protective custody were not excessive in relation to those interests. In support of

[6]Under California law, recommitment proceedings do not have to be completed prior to the end of the original commitment term, and the prisoner is not entitled to release during the time between the end of the original commitment and the beginning of the new commitment. See People v. Ramirez, 70 Cal. App. 4th 1384, 1389-91 (1999)

[7]As discussed above, under this standard plaintiff could not be subjected to more restrictive conditions than those imposed on an individual already committed as an SVP.

13

**United States District Court**
For the Northern District of California

defendants' argument, Karen Lovie, the Compliance Officer for the HCCF, offers the following evidence as to the manner in which housing decisions are made for HCCF inmates in general, and how the decision as to plaintiff's housing, in particular, was made.

The HCCF is a Type II Local Detention Facility that houses inmates pending their arraignment, during trial, and upon sentencing. Inmates at the HCCF may be assigned to live either in the general population housing unit, the protective custody housing unit, or in administrative segregation. The HCCF operates under a philosophy of "Direct Supervision." Direct supervision allows inmates in the general population housing unit to live in open dormitories; during the day they are together in "dayrooms" and at night they sleep in two-person cells. (Lovie Decl. ¶ 5.) Inmates in the protective custody housing unit also are housed in an open dormitory, where they have "almost unlimited access" to the dayroom and sleep in two-person cells. (Id. ¶ 13.) Inmates in both the general population and protective custody housing units have access to dayroom activities that include playing cards, board games, drawing, reading, and writing letters. Each housing unit adjoins a semi-outdoor recreation room, equipped with basketball and stationary exercise equipment. (Id. ¶ 5.)

Inmates who present an unusual risk or hazard to prison staff or other inmates, or who need protection from other inmates, are housed in the administrative segregation unit; they live in single-person cells or, if necessary, alone in a two-person cell. Because of the need to isolate segregated inmates from others, dayroom access for administratively segregated inmates is generally more limited than for non-segregated inmates. (Id. ¶ 5.)

Inmate programs at the HCCF include education and life skills programs, substance abuse treatment, library services, a law library, religious programs, and work programs. (Id. ¶ 6.) All inmates at the HCCF have access to medical, dental, and mental heath care. (Id. ¶ 7.)

Plaintiff arrived at the HCCF pursuant to a court order directing that he be transported from Atascadero State Hospital to the HCCF for further proceedings regarding his recommitment as an SVPA. (Id. ¶ 8.) Upon his arrival at the HCCF, plaintiff was booked and processed through medical pre-screening intake. He was then processed through Stage I

14

Classification.  (Id. ¶ 9.)  Classification in the HCCF is the process of managing the inmate population by using objective criteria and as much information as possible to determine the least restrictive and appropriate housing and program assignments for inmates that also provide for the safety and security of the facility, inmates, staff and volunteers.  (Id. ¶ 10.)  On the Stage I Classification form completed by plaintiff, he answered "No" to the question "Is there anyone in the facility that you cannot be housed with?"  He also wrote that he needed to be housed in protective custody due to his "history."  (Id. ¶ 11 & Ex. C.)

The next day, plaintiff went through the Stage II Classification process, which consists of a one-on-one interview conducted by a trained classification officer; the interview is designed to assist with determining appropriate housing and program placement for the particular inmate.  Information obtained during the Stage II Classification process includes personal background information, criminal history and prior jail or prison terms, education and educational needs, special medical or mental health care needs, program needs, past behavior in custody, past housing and work assignments in custody, and current charges and circumstances of arrest, if applicable.  (Id. ¶ 12.)  According to the information on plaintiff's Stage II Classification form, he had spent time at the HCCF two years previously, he had been incarcerated at Atascadero State Hospital for seventeen years, and there was no one at the HCCF with whom he could not be housed.  (Lovie Decl. Ex. D.)

The decision was made to house plaintiff in protective custody in SHU S529, which housing unit is comprised of seventeen double-capacity cells, one single-occupancy cell equipped to meet Americans with Disabilities Act requirements, a dayroom, and an adjoining semi-outdoor recreation room.  The protective custody afforded by SHU S529 is appropriate for detainees who may be prone to assault by others and therefore require maximum security and special designated housing.  Plaintiff had previously been in the HCCF's custody pending his criminal trial in the Humboldt County Superior Court on widely-publicized rape charges, for which he was convicted, and for a subsequent trial at which he was found to be an SVP.  Consequently, for plaintiff's safety, it was determined that he would be appropriately classified into protective custody and housed in SHU S529.  (Id. ¶ 13.)

United States District Court
For the Northern District of California

1    The SHU S529 protective custody housing unit functions in essentially the same

2    manner as the HCCF general population housing unit.  Detainees in SHU S529 have almost

3    unlimited access to the dayroom; they are allowed to mingle and talk with other protective

4    custody inmates, can shower, watch television, and make telephone calls.  While in

5    protective custody in SHU S529 plaintiff enjoyed all of the privileges afforded other

6    detainees housed in that unit, including access to his attorney, the dayroom, the law library,

7    visitation, recreation, and medical and mental health treatment.  The privileges plaintiff

8    enjoyed while in SHU S529 were equivalent to those enjoyed by inmates in the general

9    population housing unit, and were greater than those enjoyed by inmates in administrative

10   segregation.  (Id. ¶ 14.)

11   It was not possible to segregate plaintiff from penal detainees at the HCCF without

12   restricting plaintiff's privileges and access to programs.  Because the HCCF operates as a

13   direct supervision facility with open dayrooms, it does not have a separate housing unit for

14   SVPs.  Typically, the HCCF houses no more than one SVP at a time, and frequently houses

15   no SVPs.  Completely segregating plaintiff from penal detainees in the facility would have

16   restricted his out-of-cell time and related privileges, such as dayroom access, recreation room

17   access, visitation, and his ability to attend inmate programs.  Moreover, housing plaintiff in

18   the general population open-dorm housing unit would have resulted in less segregation from

19   penal detainees than in SHU S529, and would have posed a substantial safety risk to plaintiff,

20   who was a known serial rapist.  (Id. ¶ 15.)

21   Based on the above, defendants argue that SHU S529 was the least restrictive housing

22   they could provide for plaintiff while also providing for the HCCF's legitimate, non-punitive

23   interests related to maintaining jail security (including plaintiff's own safety), ensuring

24   plaintiff's presence at his recommitment proceedings, and the effective management of the

25   HCCF.

26   In response, plaintiff argues that defendants have not shown that his placement in

27   SHU S529 was not punitive, because they have not produced evidence showing they were

28   unable to provide him with a reasonable alternative to housing him in the county jail, such as

**United States District Court**
For the Northern District of California

1    housing him in a medical facility in Humboldt County.  Plaintiff does not produce evidence

2    to counter defendants' evidence that the decision to place him in SHU S529 was based on

3    legitimate, non-punitive interests, and that the restrictions he faced there were not excessive

4    in relation to those interests.

5          The Court finds defendants have produced evidence sufficient to rebut the

6    presumption that the conditions of confinement to which plaintiff was subjected in SHU

7    S529 were punitive, and that plaintiff has failed to carry his burden of demonstrating a

8    genuine issue of material fact with respect thereto.  Plaintiff's sole argument is that, as a

9    matter of law, defendants violated his constitutional rights because he was not housed in a

10   non-jail facility; in other words, he claims that the incarceration of SVPs with those who are

11   facing or have been convicted of criminal charges is unconstitutional *per se*.  Plaintiff does

12   not cite, nor is this Court aware of, any United States Supreme Court or Ninth Circuit case

13   that so holds.  Rather, the case law to date leads to the conclusion that there is no *per se*

14   prohibition on housing SVPs in facilities where criminal detainees or convicts are also

15   housed.  In <u>Seling v. Young</u>, 531 U.S. 250 (2001), for example, the United States Supreme

16   Court upheld the constitutionality of a state civil commitment statute pursuant to which SVPs

17   were held in segregated housing in prison facilities.  <u>See</u> <u>id.</u> At 261.  Similarly, the Ninth

18   Circuit, in <u>Jones v. Blanas</u>, declined to hold that SVPs may not, consistent with the

19   Constitution, be held in jail facilities, finding instead that the dispositive question when

20   assessing an SVP's constitutional challenge to his conditions of confinement is whether those

21   conditions are punitive.  <u>See</u> <u>Jones</u>, 393 F.3d at 932.

22         The Court also finds persuasive the reasoning of the district court in <u>Munoz v.</u>

23   <u>Klender</u>, 208 F. Supp. 2d 1125 (S.D. Cal. 2002).  After first finding no controlling authority

24   that would prohibit an SVP's detention in a county jail pending judicial proceedings, the

25   district court reviewed the purpose of California's SVPA and found that the plaintiff's

26   detention at the county jail while he was awaiting recommitment proceedings did not violate

27   his right to due process.  Specifically, the district court concluded that "the need to safely

28   produce dangerous detainees for judicial proceedings and associated logistical challenges

17

1  support the use of local law enforcement detention facilities for that purpose and do not run

2  afoul of any constitutional right [plaintiff] has identified."  Id. at 1144.

3      In sum, defendants have produced evidence sufficient to rebut the presumption that

4  the conditions of plaintiff's confinement at the HCCF were punitive, and plaintiff has not

5  carried his burden of producing evidence that creates a genuine issue of material fact with

6  respect thereto.  Accordingly, defendants are entitled to summary judgment on plaintiff's due

7  process claim.

8  D.    Transcor's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

9      Plaintiff claims his right to due process was violated (1) when Transcor transported

10 him from Atascadero State Hospital to the HCCF in a van where he "was not segregated

11 from the Penal Detainees/Prisoners that were already present in the vehicle," and (2) when

12 the van "stopped at a small town" and he "and five (5) other penal transportees were placed

13 into a small holding cell for approximately 6 hours."  (Compl. at 4.3 ¶ 4.)  Transcor moves to

14 dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to

15 state a claim upon which relief can be granted, or, in the alternative, for summary judgment

16 pursuant to Federal Rule of Procedure 56.  Plaintiff has not opposed Transcor's motion on

17 either ground.[8]  Because the Court, in reaching its decision, relies on facts outside of the

18 pleadings, the motion will be decided as a motion for summary judgment.  See Fed. R. Civ.

19 P. 12(b)(6).

20     As noted, plaintiff has not filed opposition to Transcor's motion.  A district court may

21 not grant a motion for summary judgment solely because the opposing party has failed to file

22 an opposition, Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994); the court

23 may, however, grant an unopposed motion for summary judgment if the movant's papers are

24 sufficient to support the motion and do not on their face reveal a genuine issue of material

25 fact, see United States v. Real Property at Incline Village, 47 F.3d 1511, 1519-20 (9th Cir.

26

27     [8]In its order of service the Court explained to plaintiff what he must do to oppose a
   motion for summary judgment filed by defendants, and as discussed in an earlier section of
28 this order addressing defendants Philp and Humboldt County's motion for summary
   judgment, plaintiff did file an opposition to that motion.

18

United States District Court
For the Northern District of California

1995) (holding local rule cannot mandate automatic entry of judgment for moving party

without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56),

rev'd on other grounds sub nom. Degen v. United States, 517 U.S. 820 (1996).

1.    Undisputed Facts Regarding Plaintiff's Transfer by Transcor

The following undisputed facts regarding plaintiff's transfer from Atascadero State

Hospital to the HCCF by Transcor are derived from the allegations in plaintiff's verified

complaint and from the declaration of Larry Coates ("Coates"), submitted by Transcor in

support of its motion for summary judgment.

Transcor is a private corporation that provides transportation services for various law

enforcement agencies throughout the United States.  (Decl. Larry Coates Supp. Transcor's

Mot. Summ. J. ("Coates Decl.") ¶ 5 & Ex. A.)  As Director of Operational Compliance for

Transcor, Coates oversees the operational details for the transportation of persons confined

by the State of California from one facility to another.  (Id. ¶ 7.)

On October 12, 2004, plaintiff was picked up by Transcor at Atascadero State

Hospital for transfer to the HCCF for civil recommitment proceedings under the SVPA.

(Compl. at 4.3 ¶ 4; Coates Decl. ¶ 19.)  Plaintiff arrived at the HCCF on October 13, 2004.

(Coates Decl. ¶ 19.)

Plaintiff was transported in a van that could hold up to twelve other individuals, in

addition to a driver and other support personnel.  (Id. ¶ 8.)  The van was divided into three

compartments, capable of holding, respectively, eight individuals, three individuals, and one

individual; the three compartments are separated from each other by metal walls so that it is

not possible for a transportee in one compartment to make physical contact with a transportee

located in any other compartment.  (Id.)  The exact seating arrangement of the persons being

transported on a given journey is based on the determination of how best to maintain security

and safety of all occupants of the van.  (Id.)  While individuals are being transported in a

Transcor van, they are restrained so as to prevent any person from being able to physically

harm another person, and so that Transcor employees can maintain control over the persons

being transported, as there are more individuals being transported than Transcor employees

1   present in the vehicle.  (Id. ¶ 9.)  If Transcor did not have the ability to determine where any

2   particular individual would be seated during a transport, the safety of all passengers and

3   Transcor's employees would be jeopardized.  (Id. ¶ 13.)  Plaintiff was not separated from

4   penal detainees and/or prisoners in the van in which he was transported from Atascadero

5   State Hospital to the HCCF by Transcor.  (Comp. at 4.3 ¶ 4.)

6        Given scheduling demands present at the time plaintiff was transported by Transcor, it

7   was not possible to transport him directly from Atascadero State Hospital to the HCCF;

8   instead, Transcor dropped plaintiff off and picked him up at a county jail located between the

9   pick-up and drop-off points of Atascadero State Hospital and the HCCF.  (Coates Decl. ¶

10  20.)  While at said county jail, plaintiff and five other penal transportees were placed into a

11  small holding cell for approximately six hours.  (Compl. at 4.3 ¶ 4.)

12       2.   Municipal Liability

13       Plaintiff alleges that Transcor, acting under contract with the State of California,

14  violated his right to due process by transporting him with penal detainees and/or prisoners,

15  and allowing him to be housed at the county jail with penal detainees and/or prisoners while

16  en route from Atascadero State Hospital to the HCCF.  Transcor argues plaintiff has not

17  presented evidence showing Transcor was acting pursuant to a municipal policy and,

18  consequently, has not established that Transcor violated his constitutional rights.

19       At the outset, the Court must determine whether Transcor, a private corporation, was

20  acting as a municipality subject to liability under 42 U.S.C. § 1983 when it transported

21  plaintiff from Atascadero State Hospital to the HCCF.  An essential element of an action

22  brought under § 1983 is that the defendant accused of violating the plaintiff's constitutional

23  rights acted under color of state law.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

24  Action taken by private individuals or organizations may be under color of state law "if,

25  though only if, there is such a close nexus between the State and the challenged action that

26  seemingly private behavior may be fairly treated as that of the State itself."  Brentwood

27  Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295-96 (2001) (internal

28  quotation and citation omitted).  Here, Transcor does not dispute that it was acting under

United States District Court
For the Northern District of California

20

color of state law when it transported plaintiff.  (Mot. Summ. J at 5.)  Accordingly, for the

purpose of this order, the Court assumes, <u>arguendo</u>, that Transcor is a state actor.

Transcor argues that as a private corporation acting under color of state law, it must be

treated as though it were a municipality for purposes of § 1983.   The Court is unaware of

any Ninth Circuit decision addressing the question of whether a private corporation must be

treated as a municipality under § 1983; other federal Courts of Appeals, however, applying

the principles set forth in <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978), have held

that a private corporation will be found liable under § 1983 only when an official policy or

custom of the corporation causes the deprivation of constitutional rights.  <u>See, e.g.</u>, <u>Dubbs v.

Head Start, Inc.</u>, 336 F.3d 1194, 1216 (10th Cir. 2003); <u>Austin v. Paramount Parks, Inc.</u>, 195

F.3d 715, 727-28 (4th Cir. 1999); <u>Sanders v. Sears, Roebuck & Co.</u>, 984 F.2d 972, 975-76

(8th Cir. 1993) <u>Iskander v. Village of Forest Park</u>, 690 F.2d 126, 128 (7th Cir. 1982).  In

accordance with said authority, the Court, for purposes of plaintiff's claim under § 1983,

finds Transcor should be treated in the same manner as a municipality.

As discussed earlier in this order, a municipality may not be held vicariously liable for

the unconstitutional acts of its employees under a theory of respondeat superior.  <u>Board of

County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997).  Rather, a municipality is subject to

liability under § 1983 only where official policy or custom results in a violation of a

constitutional right.  <u>Monell</u>, 436 U.S. at 690.  To impose liability under <u>Monell</u>, a plaintiff

must show: (1) that the plaintiff possessed a constitutional right of which he or she was

deprived; (2) that the municipality had a policy; (3) that such policy amounted to deliberate

indifference to the plaintiff's constitutional rights; and (4) that such policy was the moving

force behind the constitutional violation.  <u>See</u> <u>Plumeau v. School Dist. #40 County of

Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997).  Proof of random acts or isolated incidents of

unconstitutional action by a non-policymaking employee are insufficient to establish the

existence of a municipal policy or custom.  <u>See</u> <u>McDade v. West</u>, 223 F. 3d 1135, 1141 (9th

Cir. 2000).  "Instead, it is when the execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent

**United States District Court**
For the Northern District of California

21

1 official policy, inflicts the injuries that the government as an entity is responsible under

2 § 1983." <u>Monell</u>, 436 U.S. at 694.

3        As discussed below the Court finds Transcor is entitled to summary judgment on

4 plaintiff's claims, because plaintiff has not established he was deprived of a constitutional

5 right as a result of any Transcor policy.

6                  a.   <u>Transporting Plaintiff with Penal Detainees and/or Prisoners</u>

7        With respect to plaintiff's claim that Transcor transported him in a van in which he

8 was not segregated from penal detainees and/or prisoners, the Court must make the initial

9 determination whether, under the facts as viewed in a light most favorable to plaintiff, such

10 conduct was unconstitutional.  In support of Transcor's argument that plaintiff has not

11 established grounds for municipal liability, Transcor does not directly address the question of

12 whether its conduct was unconstitutional; rather, Transcor argues that even if there was a

13 constitutional violation, said violation was not the result of any Transcor policy.  In the

14 section of Transcor's motion for summary judgment in which it raises the defense of

15 qualified immunity, however, Transcor does argue that its conduct did not rise to the level of

16 a constitutional violation.  As such argument applies equally to the issue of whether plaintiff

17 has established an underlying constitutional violation, for purposes of municipal liability, the

18 Court considers that argument in its analysis of the instant claim.

19        In his complaint plaintiff asserts that transporting him in a van in which he was not

20 segregated from penal detainees and/or prisoners is unconstitutional, but he points to no case

21 authority supporting such an assertion.  Transcor argues it did not violate plaintiff's

22 constitutional rights because cases establishing the due process requirements applicable to an

23 SVP's conditions of confinement do not apply to an SVP's claim based on the manner in

24 which he was transported from one location to another.  Additionally, Transcor argues, it did

25 not violate plaintiff's constitutional rights because legitimate, non-punitive interests justified

26 the conditions to which plaintiff was subjected when he was  transported, and the restrictions

27 imposed upon plaintiff were not excessive in relation to those interests.  <u>See Jones</u>, 393 F.3d

28 at 934.  The Court finds Transcor's arguments persuasive for the following reasons.

United States District Court
For the Northern District of California

1    Plaintiff has pointed to no case, and the Court is aware of none, that holds transporting

2    SVPs, or other civilly detained individuals, under conditions in which they are not segregated

3    from persons charged with or convicted of crimes is unconstitutional *per se*.  There exists

4    some support for the proposition that an SVP plaintiff could state a claim for the violation of

5    his constitutional right to personal security were he to allege facts showing he was injured by

6    criminal detainees while being transported, see Bacon v. Kolender, No. 05cv0310 BTM

7    (PCL), 2007 WL 2669541, *12 (S.D. Cal. Sept. 6, 2007), or for a violation of his

8    constitutional right to be free from the use of excessive force were he to allege facts showing

9    officials used excessive means of restraint in transporting him, see Hydrick v. Hunter, 500

10   F.3d 978, 997-98 (9th Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3410 (U.S. Jan. 17,

11   2008) (No. 07-958).  Here, however, plaintiff makes no such allegations, nor can the

12   inference of such constitutional injury be drawn from his single allegation that he was

13   transported in a van where he "was not segregated from the Penal Detainees/Prisoners that

14   were already present in the vehicle."  (Compl. at 4.3 ¶ 4.)

15   Transcor argues that the case of Jones v. Blanas, discussed above in connection with

16   defendants Philp and Humboldt County's motion for summary judgment, did not establish

17   that Transcor could not lawfully transport plaintiff with penal detainees and/or prisoners.  In

18   particular, Transcor points out, Jones addressed a claim concerning conditions of

19   confinement incident to the *housing* of SVPs; specifically, whether housing an SVP pursuant

20   to California Penal Code §§ 4001 and 4002(a) constituted punitive conditions of

21   confinement.  See Jones, 393 F.3d at 923, 934.  Thus, Transcor agues, the matter of

22   transportation simply was not at issue in the Jones case.   Similarly, the matter of

23   transportation was not at issue in the Ninth Circuit's subsequent decision in Hydrick, wherein

24   the Ninth Circuit clarified that the "contours of law" concerning the protections afforded to

25   civil committees and pretrial detainees under the Fourteenth Amendment were clearly

26   established by the Supreme Court's decisions in Youngberg v. Romeo, 457 U.S. 307 (1982)

27   (establishing due process requirements for conditions of confinement for civil committees),

28   and Bell v. Wolfish, 441 U.S. 520 (1979) (establishing due process requirements for

**United States District Court**
For the Northern District of California

1  conditions of confinement for pretrial detainees).  See Hydrick, 500 F.3d at 998 & n.16.  In

2  particular, Hydrick observed, it was well established that a civilly-committed individual

3  could not be subjected to conditions of confinement amounting to punishment.  Id. at 997.

4  Hydrick did not, however, address in any manner, let alone the constitutionality of, the

5  propriety of transporting SVPs with penal detainees and/or prisoners.   Accordingly, there is

6  no case law expressly supporting plaintiff's argument that the manner in which he was

7  transported was unconstitutional.

8          Finally, even if the presumption of punishment established in Jones applies to

9  transportation claims brought by an individual such as plaintiff who is awaiting  adjudication

10  as an SVP, Transcor argues it has rebutted the presumption of punitive conditions by

11  showing that legitimate, non-punitive interests justified the conditions to which plaintiff was

12  subjected when he was transported, and that the restrictions imposed upon plaintiff were not

13  excessive in relation to those interests.  See Jones, 393 F.3d at 934.  The Court finds Transcor

14  has rebutted the presumption of punitive conditions by producing undisputed evidence

15  showing that it used its professional judgment in determining where plaintiff would be seated

16  in the van, based on the need to maintain the security and safety of all of the van occupants,

17  and that plaintiff was not subjected to restrictions that were excessive in relation to

18  Transcor's legitimate security concerns.

19          In sum, when the facts alleged by plaintiff are viewed in the light most favorable to

20  him, the Court finds plaintiff has not shown the violation of a constitutional right.

21          Even if plaintiff could show the violation of a constitutional right, however, the Court

22  is persuaded by Transcor's argument that plaintiff's municipal liability claim nonetheless

23  must fail because plaintiff has not produced evidence showing that the failure to segregate

24  him from penal detainees and/or prisoners when he was transported was other than an

25  isolated incident resulting from actions taken by non-policymaking Transcor employees.  As

26  noted, plaintiff has not opposed defendants' motion for summary judgment; thus, the only

27  evidence he has produced in support of his claim is the allegation in his verified complaint

28  that he was not segregated from penal detainees and/or prisoners when he was  transported.

United States District Court
For the Northern District of California

1  Even when viewed in the light most favorable to plaintiff, this allegation does not give rise to

2  a reasonable inference that the violation of plaintiff's constitutional rights was the result of

3  any Transcor policy, rather than the result of the random actions of non-policymaking

4  Transcor employees.  See McDade, 223 F.3d at 1142.  Accordingly, as plaintiff has not

5  raised a genuine issue of material fact as to whether his constitutional rights were violated

6  pursuant to a policy of Transcor, Transcor is entitled to summary judgment on plaintiff's

7  claim.

8              b.     Placement in Holding Cell with Penal Detainees and/or Prisoners

9       Plaintiff claims Transcor violated his constitutional rights when, en route from

10 Atascadero State Hospital, Transcor dropped plaintiff off at a county jail where plaintiff and

11 five other penal transportees were placed into a small holding cell for approximately six

12 hours before plaintiff was picked up and taken to the HCCF.  Transcor argues plaintiff cannot

13 establish any constitutional violation by Transcor resulting from plaintiff's conditions of

14 confinement at the county jail because he has not shown that Transcor either had custody

15 over plaintiff or any authority over the conditions of his confinement at the time he was at the

16 county jail.

17      In support of Transcor's argument that it did not have custody over plaintiff between

18 the time it dropped him off and picked him up at the county jail, Transcor has produced the

19 following evidence: (1) Transcor's services for the State of California are limited to

20 transporting individuals from one location to another; (2) Transcor's scheduling demands did

21 not allow for plaintiff to be transported directly from Atascadero State Hospital to the HCCF;

22 (3) Transcor temporarily dropped plaintiff off at the county jail and then picked him up to

23 complete the trip to the HCCF; (4) Transcor was responsible only for transporting plaintiff

24 and did not retain custody over him when he was at the county jail; and (5) Transcor did not

25 have the ability or authority to dictate the conditions of plaintiff's confinement while plaintiff

26 was at the county jail.  (Coates Decl. ¶¶ 16-22.)  Plaintiff has produced no evidence showing

27 Transcor retained custody over him when he was at the county jail or that Transcor had any

28 authority to dictate the conditions of his confinement therein; the only evidence he has

United States District Court
For the Northern District of California

produced linking Transcor to his confinement at the county jail is that Transcor dropped him off there.  This evidence does not create a genuine issue of material fact with respect to whether Transcor was responsible for the conditions of plaintiff's confinement at the county jail.

Further, even if Transcor were responsible for the conditions of plaintiff's confinement at the county jail and, under <u>Jones v. Blanas</u>, those conditions of confinement were presumed to be punitive and to have resulted in the violation of plaintiff's constitutional rights, plaintiff's municipal liability claim must fail because he has not produced any evidence showing Transcor's failure to ensure he was not confined with penal detainees and/or prisoners while at the county jail was other than an isolated incident resulting from actions taken by non-policymaking Transcor employees.  Accordingly, as plaintiff has not raised a genuine issue of material fact as to whether his constitutional rights were violated pursuant to a policy of Transcor, Transcor is entitled to summary judgment on plaintiff's claim for this additional reason as well.

> 3.    <u>Qualified Immunity</u>

Transcor argues, in the alternative, it is entitled to qualified immunity on plaintiff's claims.  The defense of qualified immunity is not categorically available to private actors acting under color of state law, however; rather, courts must look both to the history and to the purposes that underlie government employee immunity in order to determine whether such immunity extends to private parties.  <u>Richardson v. McKnight</u>, 521 U.S. 399, 404 (1997).  In <u>Richardson</u>, the Supreme Court addressed the question of whether there is a firmly-rooted tradition of immunity warranting extension of the qualified immunity defense to private prison guards.  Finding no such tradition existed, the Supreme Court concluded the defense was not available in the context before it, i.e., one in which "a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms."  <u>Id.</u> at 412.

Here, Transcor is a private corporation acting in a context substantially similar to that

1   of the private prison corporation in <u>Richardson</u>; accordingly, the Court finds Transcor it not

2   entitled to assert the defense of qualified immunity.[9]  For the reasons discussed below,

3   however, the Court finds Transcor is entitled to assert a good faith defense.

4          4.       <u>Good-Faith Defense</u>

5          Where qualified immunity is not available to a defendant who is private actor in an

6   action brought under 42 U.S.C. § 1983, the defendant nevertheless may assert a good faith

7   defense to liability.  <u>Clement v. J&E Service Inc.</u>, No. 05-56692, slip op. 2347, 2359 (9th

8   Cir. March 11, 2008).  "A good faith defense fully protects defendants who act in good faith

9   and thus provides them with protections similar to qualified immunity."  <u>Franklin v. Fox</u>, No

10  C 97-2443 CRB, 2001 WL 114438, *5 (N.D. Cal. Jan. 22, 2001).  Application of the good

11  faith defense turns on the defendant's subjective good faith; because good faith is an

12  affirmative defense to liability, the defendant bears the burden of proof.  <u>See id.</u> at *5-6; <u>see</u>

13  <u>also</u> <u>Tarantino v. Syputo</u>, No. C 03-3450 MHP, 2006 WL 1530030, *10 (N.D. Cal. June 2,

14  2006).

15         Here, Transcor is entitled to the good faith defense because no material dispute exists

16  as to whether it acted in subjective good faith both when transporting plaintiff with penal

17  detainees and/or prisoners, and when allowing the county jail to determine plaintiff's

18  conditions of confinement when Transcor dropped him off there.[10]  Specifically, the evidence

19  does not show that Transcor should have known that its actions violated plaintiff's

20  constitutional rights.  As discussed above with respect to the conditions of plaintiff's

21  transport, there was no case law holding that plaintiff could not be transported in a van in

22  which he was not segregated from penal detainees and/or prisoners.  Further, legitimate, non-

23

24         [9]The Court is aware of no case, either prior to <u>Richardson</u> or since, in which the Ninth
25  Circuit has found a private actor is entitled to qualified immunity.

26         [10]The Court finds Transcor has not waived its assertion of the good faith defense.  <u>See</u>
    <u>Clement</u>, slip op. at 2359-60.  By asserting in its motion for summary judgment that it
27  believed (1) the law did not require plaintiff to be segregated from penal detainees and/or
    prisoners during transport, and (2) it did not have custody over plaintiff when he was at the
28  county jail and had no authority over the conditions of his confinement, Transcor sufficiently
    put plaintiff on notice that it intended to raise a good faith defense.  <u>See id.</u> at 2360.

punitive interests justified the conditions under which plaintiff was transported, and the restrictions imposed upon him were not excessive in relation to those interests.  Additionally, as discussed above with respect to plaintiff's conditions of confinement at the county jail, Transcor believed that it did not have custody over plaintiff when it dropped him off at the county jail or authority over plaintiff's conditions of confinement while he was confined there.

In sum, there is no evidence that Transcor believed its actions were unlawful; accordingly, Transcor is entitled to the good faith defense and summary judgment will be granted in Transcor's favor.  See, e.g., Clement, slip op. at 2359-60 (finding towing company acted in good faith where evidence showed towing company did its best to follow law and had no reason to suspect its actions would be subject to constitutional challenge); Tarantino, 2006 WL 1530030 at *10 (finding towing company acted in good faith where evidence showed towing company followed city procedures that did not violate clearly established law); Franklin, 2001 WL 114438 at *6-7 (finding private individual acted in good faith where evidence did not suggest she knew she was violating plaintiff's constitutional rights).

## CONCLUSION

For the reasons stated, the Court orders as follows:

1.  Defendants Philp and Humboldt County's motion for summary judgment is hereby GRANTED.  (Docket No. 6 .)

2.  Defendant Transcor's motion to dismiss or, in the alternative, motion for summary judgment, is hereby GRANTED.  (Docket No. 18.)

The Clerk shall enter judgment in favor of all defendants and close the file.

This order terminates Docket Nos. 6 and 18.

IT IS SO ORDERED.

DATED: March 28, 2008

MAXINE M. CHESNEY
United States District Judge